674 A.2d 161

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. JOHN F. HINDS, DEFENDANT–RESPONDENT.

Argued November 28, 1995—Decided April 10, 1996.

*Marcy H. Geraci,* Deputy Attorney General, argued the cause for appellant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney).

*Jay L. Wilensky,* Assistant Deputy Public Defender, argued the cause for respondent (*Susan L. Reisner,* Public Defender, attorney).

The opinion of the Court was delivered by

O'HERN, J:

The primary question in this appeal is whether an off-duty police officer who conspires with the private security manager of a store to engage in shoplifting may be found guilty of official misconduct. On the facts of this case, we hold that the officer's

conduct was sufficiently related to his official status to constitute the crime of official misconduct. The secondary issue is one of accomplice liability. We find that the defendant in this case, who was the store's security manager, may be found guilty as an accomplice to the official misconduct committed by the off-duty police officer.

## I

We accept generally the recital of testimony set forth in the defendant's Appellate Division brief. Of course, defendant disputes much of the testimony, but it could have formed the basis for the jury's verdict.

In December 1990, John Hinds was employed as the security manager of a Caldor department store in Holmdel. Co-defendant Michael T. Borsari was a twenty-one year member of the Holmdel police force who had reached the rank of detective sergeant and was in charge of the Detective Bureau. Borsari and Hinds had known each other for twenty years. Borsari admitted having taken merchandise from the Holmdel Caldor on three occasions—December 13, 1990, December 16, 1990, and one other date that he could not specifically recall. He denied that he committed theft on any other days. Borsari also denied that Hinds was aware of his activities, that Hinds conspired with him, or that Hinds received any money or merchandise as a result.

Thomas Keenan, the store manager, however, suspected that Borsari and Hinds were jointly involved in theft. Keenan noticed that Borsari was often in the store with Hinds for long periods of time. On one occasion, Keenan saw Borsari, who had a blue Rubbermaid container in his shopping cart, hold up two items of merchandise in Hinds' direction. He then saw Borsari leave the store with the merchandise in the cart and Hinds behind him. The manager knew that Borsari had not purchased the merchandise. Keenan alerted the Operations Manager of the store to the purported activities of Hinds and Borsari. The Operations Manager herself had noticed that Borsari was frequently in the store

with Hinds.  She suspected that Borsari had not paid for some merchandise removed from the store because she checked a register, although she conceded that there were many banks of registers in the store.  Hinds had once introduced her to Borsari and when she commented that Borsari was in the store often, Borsari replied that he "helped Hinds catch shoplifters."

Two other employees described Borsari as being in the store almost "on a daily basis" to speak to Hinds.  Shortly before Christmas in 1990, one employee observed Borsari in the parking lot with a cart filled to the top with merchandise that was neither "bagged nor tagged."  He informed Hinds, who responded, "He better not have or I'll kick his ass."  But Hinds took no steps to pursue Borsari or to see what was in the cart.  When another employee mentioned to Hinds that Borsari had left with unpaid merchandise on a separate occasion, Hinds responded, "It can't be true and if it was [I] would punch Mike [Borsari] in the nose."

Ultimately, Caldor's Loss Prevention Department contacted the New Jersey State Police Corruption Department.  An investigator for the State Police arranged for a security investigator from Caldor, not known in Holmdel, to perform a surveillance of the store.  This investigator testified that he saw Hinds and Borsari pacing back and forth in the vestibule of the store with Borsari eventually pushing a cart loaded with merchandise out of the door without stopping at a cash register.  Borsari conceded that he had taken merchandise from the store on that date but denied that Hinds was in the area of the vestibule when he left.

On another date, the Caldor investigator observed Hinds and Borsari standing together near the appliance department.  Borsari then pushed a cart through the store, took various items, and placed them within a Rubbermaid container with items on top of it.  Next, Borsari entered the shoe department out of the investigator's sight, with the merchandise no longer visible.  Eventually Borsari reappeared in the parking lot with a shopping cart loaded with unpaid-for Caldor merchandise.

The State Police investigator testified that, when confronted, Borsari said that "he was also a police officer working with John Hinds, the store's security manager." There followed a disputed conversation about whether the State Police investigator threatened Borsari that he would lose his job and pension rights unless he implicated Hinds. Borsari has denied stating in this conversation that he was working with Hinds.

The jury convicted Hinds and Borsari of conspiracy, official misconduct, theft, and theft by receiving stolen property. On Hinds' appeal, the Appellate Division reversed his conviction of official misconduct. It also reversed the other convictions for trial errors and remanded those matters for a new trial. It held, however, that Hinds could not be re-tried on the charge of official misconduct because Borsari himself could not have been found to have committed an act of official misconduct on these facts. While we originally denied the State's petition for certification, 140 *N.J.* 276, 658 *A.*2d 300 (1995), we granted the State's petition for certification on its motion for reconsideration. 142 *N.J.* 452, 663 *A.*2d 1359 (1995).

## II

Prior to the 1979 adoption of *N.J.S.A.* 2C:30–2, official misconduct was both a statutory crime and a common law crime. *State v. Maioranna,* 225 *N.J.Super.* 365, 368, 542 *A.*2d 510 (Law Div. 1988), *affirmed,* 240 *N.J.Super.* 352, 573 *A.*2d 475 (App.Div.1990), *and certif. denied,* 127 *N.J.* 327, 604 *A.*2d 601 (1991). The contours of the common law crime were vague and elusive.

> [T]he term "misconduct in office" is sometimes used in a generic sense to refer broadly to all official wrongdoing, thus including in its sweep the more particularized crimes of extortion, bribery and the like, as well as in the special sense, as here, to designate an offense which bears no other name and is comprised of elements differing in some particulars from those of the related crimes. Distinctions have become shadowy and labels imprecise and somewhat non-exclusive. There are many situations, like that before us, where essentially the same factual situation could properly ground a prosecution for more than one of these offenses.
>
> [*State v. Begyn,* 34 *N.J.* 35, 45, 167 *A.*2d 161 (1961).]

In general, culpability for official misconduct at common law attached to

> 1) any act which is wrongful in itself—malfeasance, or 2) any lawful act performed in an unlawful manner—misfeasance, or 3) omission to do any act which is required of him by the duties of his office—nonfeasance. However, the precise sub-labeling is not always found and is not requisite. The gravamen of the charge of misconduct is malfeasance—the doing of an act which is positively unlawful or wrong.
>
> [*Maioranna, supra,* 225 *N.J.Super.* at 369, 542 *A.*2d 510 (citation omitted).]

The 1979 Code of Criminal Justice abolished common law crimes. *N.J.S.A.* 2C:30–2 now defines official misconduct as follows:

> Official Misconduct. A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
>
> a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
>
> b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
>
> Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.

The 1971 Commentary of the Criminal Law Revision Commission explains:

> This is Section § 195.00 of the New York Code. It is intended to consolidate the law as to malfeasance and non-feasance by public servants....
>
> ....
>
> Subsection a, which condemns aggressive action, requires that the "act" relate to the public servant's office and that it constitute an unauthorized exercise of his official functions. In addition, the public servant must know that such act is unauthorized ... because it is declared to be such by statute, ordinance, rule, regulation or otherwise.
>
> Subsection b, the "omission to act" phase of this offense, has reference to a public servant who consciously refrains from performing an official non-discretionary duty, which duty is imposed upon him by law or which is clearly inherent in the nature of his office. In addition, the public servant must know of the existence of such non-discretionary duty to act. Thus, such duty must be either one that is imposed by law, or one that is unmistakably inherent in the nature of the public

servant's office, i.e., the duty to act is so clear that the public servant is on notice as to the standards that he must meet. In other words, the failure to act must be more than a mere breach of good judgment. In the absence of a duty to act, there can be no conviction.

The kind of culpability required by this Section is stated alternatively, i.e., the public servant's intent must be either (a) to obtain a benefit, or (b) to injure another person or to deprive another person of a benefit.

[Cannel, *Criminal Code Annotated,* Comment *N.J.S.A.* 2C:3–2.]

The indictment charged the defendants with violations of section 2(b), the failure-to-act prong of the statute. While no special or private law prescribes the duties of police officers, such duties are inherent or implicit in the nature of the office. *Maioranna, supra,* 225 *N.J.Super.* at 371, 542 *A.*2d 510 (quotation omitted).

We have had occasion in recent cases to consider official misconduct among off-duty officers. In *Moore v. Youth Correctional Inst.,* 119 *N.J.* 256, 270, 574 *A.*2d 983 (1990), we found that an off-duty corrections officer who trespassed upon his superior's property to commit a harassing act committed an act that "involved and touched" his employment. "New Jersey cases have generally adhered to the involve and touch analysis . . . and have applied it regardless of whether the employee committed the offense on the job premises or during work hours." *Id.* at 269, 574 *A.*2d 983. In *State v. Johnson,* 127 *N.J.* 458, 606 *A.*2d 315 (1992), we determined that an off-duty state trooper could be found to have committed official misconduct when he donned his uniform and feigned a drug arrest. In *State v. Bullock,* 136 *N.J.* 149, 642 *A.*2d 397 (1994), we held that a temporarily suspended officer nonetheless involves his office and is guilty of an act of official misconduct when he represents himself as a police officer while perpetrating a crime.

The acts of the off-duty officers in *Johnson* and *Bullock* were sufficiently related to the officers' official status to constitute official misconduct because they made calculated use of an office to avoid suspicion and to instill in unsuspecting victims a false sense of security. Borsari's conduct and statements to Caldor employees demonstrate that the jury could find that Borsari too used his office to instill a false sense of security and to avoid

suspicion. Recall that when the store Operations Manager grew suspicious and confronted Borsari, he alleviated her concerns by stating that he "helped Hinds catch shoplifters."

Defendant has relied principally upon the concurring opinion of Chief Justice Weintraub in *State v. Cohen*, 32 *N.J.* 1, 158 *A.*2d 497 (1960). In that case, the Chief Justice suggested that the mere violation of the law by a police officer would not constitute official misconduct.

> [A police officer] is indictable for nonfeasance, misfeasance or malfeasance only if, with the requisite criminal mind, he fails to perform or improperly performs his public duty.
>
> . . . .
>
> If his act, thus criminal when committed by a private citizen, does relate to the performance of his duty of office, ... he would be guilty at least of nonfeasance with respect to his specific duty....
>
> But I cannot agree that a policeman is guilty of the common-law crime by reason of his every infraction of the penal laws. A police officer is not appointed to prevent *himself* from committing offenses, nor to detect and arrest *himself*. Rather, his *official* role is to deal with others. It is much too attenuated and unrealistic a thought that a man be his own policeman.... I do not see how a line could be drawn short of such absurdities if it were held that a policeman has the *public duty* to prevent himself from violating the law and to detect his own infractions.
>
> [32 *N.J.* at 13–14, 158 *A.*2d 497 (Weintraub, C.J., concurring).]

Defendant thus argues that a police officer who commits a crime unrelated to his office and while off duty does no more than commit the underlying crime. Because Hinds' conviction as an accomplice is predicated on the substantive guilt of Borsari, he argues that "the principal's guilt would consist essentially of the failure to apprehend himself, a clearly untenable result under common law."

This is a sophisticated argument, but we believe that it fails to take into account the reality of the situation. The jury must have believed that Hinds shared in the proceeds with Borsari as it convicted Hinds of the receipt of stolen goods. It thus found that Hinds was a thief. That being so, Borsari undoubtedly had a duty to report Hinds' crimes. In *Robey v. Indiana*, 484 *N.E.*2d 628

(Ind.Ct.App.1985), the court held that a store security guard, appointed by the Sheriff as a deputy, who accepted money to forego the arrest and prosecution of a person who left the store with unpurchased merchandise was guilty of official misconduct. Reasoning that the duties of a police officer include the mandate to arrest persons committing a crime within the officer's presence, the court found it inconceivable that the officer would not be expected to apprehend shoplifters. *Id.* at 629. Hinds was essentially engaged in shoplifting. (The amounts involved take the case beyond the offense of shoplifting.)

In its opinion below, the Appellate Division relied upon the Commentary to the repealed crime of "official oppression" to bolster its conclusion that Borsari could not be guilty of official misconduct. We are not so sure, however, that the Commentary to repealed *N.J.S.A.* 26:30–1 "is equally applicable to *N.J.S.A.* 2C:30–2," *State v. Hinds,* 278 *N.J.Super.* 1, 11, 650 *A.2d* 350 (App.Div.1994), as the crime of official oppression was repealed before it became effective and neither the enacted *N.J.S.A.* 2C:30–2 nor its legislative history included language concerning "purely private wrongdoing by one who may incidentally be a public servant." *See* Cannel, *Criminal Code Annotated* Comment, *N.J.S.A.* 2C:30–1 ("The Commission Commentary to proposed 2C:30–1 is reprinted below for whatever value it may still have.").

Moreover, as noted above, our law is based on New York law. In New York, a police officer who receives stolen goods while off duty may still be found guilty of official misconduct. *People v. Ventura,* 108 *A.D.2d* 65, 487 *N.Y.S.2d* 785 (1st Dept.), *affirmed,* 66 *N.Y.2d* 693, 496 *N.Y.S.2d* 416, 487 *N.E.2d* 273 (N.Y. 1985). The flip side of the issue (the honest off-duty cop making the arrest) is often seen. An off-duty police officer out of uniform and working as a security guard observing a crime "ha[s] the right and duty to arrest and detain a person who was violating a law." *Tapp v. Indiana,* 406 *N.E.2d* 296, 301 (Ind.Ct.App.1980) (quoting

*State v. Glover,* 52 *Ohio App.*2d 35, 367 *N.E.*2d 1202, 1204 (Ohio Ct.App.1976)).

Of course, not every offense committed by a public official involves official misconduct. *See Craig v. Texas,* 31 *Tex.Crim.* 29, 19 *S.W.* 504 (App.1892) (holding that drunkenness in office did not involve official misconduct); *Hall v. Texas,* 736 *S.W.*2d 818, 819–20 (Tex.Ct.App.1987) (involving "nothing more than an individual driving an automobile in a negligent manner"). We need not debate the outer limits of the crime of official misconduct. At oral argument, the Attorney General urged us to accept an expansive interpretation of 2C:30–2 that might possibly subject police officers to liability for official misconduct whenever they violate the law. In a context like this, the statute itself confines the crime of official misconduct to those circumstances in which an officer refrains from performing a duty to "obtain a benefit for himself or another or to injure or to deprive another of a benefit." *See State v. Scirrotto,* 115 *N.J.* 38, 45–46, 556 *A.*2d 1195 (1989) (defining, in the analogous context of bribery, the meaning of "benefit"). So, for example, an off-duty officer who assaults an opponent in a weekend softball game is not realistically trying to deprive that individual of a benefit or to obtain a benefit for himself or his teammates. However, by refraining from performing his duty to turn in Hinds, although he would have necessarily turned in himself, Borsari conferred a benefit on Hinds and also obtained a benefit for himself. Borsari cannot escape that responsibility by conspiring with a thief. The trial court below understood this distinction and correctly impressed upon the jury in the charge that Borsari could not be guilty of official misconduct unless "his failure to act [was] done with the purpose to obtain a benefit for himself and/or for others."

## III

The subsidiary question is whether Hinds may be found guilty as an accomplice to the crime of official misconduct. Although we denied Hinds' cross-petition for certification on the issue of accomplice liability, 140 *N.J.* 276, 658 *A.*2d 300 (1995), principles of justice require that we consider the issue. Hinds

argues that he is not in any manner a public official and that it would be clearly improper to apply the official misconduct statute to a private person. If the statute applies to Borsari, it functions to enhance the penalties imposed upon him as a public official. Hinds asserts that no reason in law exists to extend that policy of enhancement to a private citizen.

Yet, our decisions have held that a private person may be an accomplice to official misconduct. *See State v. Bryant,* 257 *N.J.Super.* 63, 68, 607 *A.*2d 1343 (App.Div.1992) (finding private person who brought together corrupt public officials for bribery scheme guilty of official misconduct). We see nothing to add to Judge D'Annunzio's discussion of the issue in *Bryant,* in which the court determined that *"N.J.S.A.* 2C:2–6d ... anticipates the defense of lack of capacity" for accomplice liability to official misconduct. *Id.* at 67, 607 *A.*2d 1343. The Section provides:

A person who is legally incapable of committing a particular offense himself may be guilty thereof if it is committed by another person for whose conduct he is legally accountable, unless such liability is inconsistent with the purpose of the provision establishing his incapacity.

*[N.J.S.A.* 2C:2–6d.]

The *Bryant* court further noted that "[m]isconduct by public officials frequently is encouraged, aided and facilitated by persons outside government and, therefore, accomplice liability is consistent with the statutory aims of deterrence and punishment implicit in *N.J.S.A.* 2C:30–2." *Bryant, supra,* 257 *N.J.Super.* at 68, 607 *A.*2d 1343 (footnote omitted). *Bryant* is consistent with federal law on the issue of the accountability of an aider and abettor or conspirator for status crimes. *See, e.g., United States v. Ruffin,* 613 *F.*2d 408, 413 (2d Cir.1979) ("Where the principal is found guilty of a criminal offense ... it is undisputable that a person may be convicted as an aider and abettor ... even though he may lack the capacity to violate the substantive criminal statute."); *United States v. Lester,* 363 *F.*2d 68, 72–73 (6th Cir.1966) (holding defendants liable for conspiring to willfully cause police officers to act "under color of State law" to deprive third party of civil rights even though police officers were found innocent of any wrongdoing

and defendants lacked capacity to act "under color of State law"), *cert. denied,* 385 *U.S.* 1002, 87 *S.Ct.* 705, 17 *L.Ed.*2d 542 (1967).

Defendant insists that *Bryant* is not applicable because it relates to the first prong of official misconduct, the unauthorized exercise of official function. Still, we think that the principles are similar. In *People v. Teitelbaum,* 138 *A.D.*2d 647, 526 *N.Y.S.*2d 230 (App.Div.2d Dept.1988), a New York court treated as an accomplice to official misconduct one who offered a sexual inducement to an officer to refrain from issuing a summons. Hinds offered Borsari an inducement (free rein of the store) to refrain from performing his duty to turn in Hinds. Obviously, in the retrial of this case the jury must be charged that to be found guilty of accomplice liability Hinds must have acted with the purpose of promoting or facilitating the substantive offense for which he is charged as an accomplice. Hinds should not be liable for official misconduct in the absence of proof that he shared with Borsari the intent to abuse Borsari's office.

As for Borsari, to convict him of official misconduct, the jury must find that he was a public servant at the time of the alleged crime, and that he refrained from performing an act that he was required to perform as part of his office, with the purpose to benefit himself or another, or to injure or deprive another of a benefit. In its official misconduct charge to the jury below, the trial court focused the jury's attention on the "joint criminal activity" of the two defendants and the fact that Borsari "protect[ed] himself and Hinds by seeing that the criminality of them would not be brought ... to the attention of others who would take some action to bring [Borsari and Hinds] to justice." Such misconduct is sufficiently related to Borsari's status to sustain his conviction of official misconduct. *See State v. Bullock, supra,* 136 *N.J.* at 153, 642 *A.*2d 397. We surmise from the evidence in this case that a jury could clearly find that Hinds shared Borsari's intent to abuse his office.

The judgment of the Appellate Division on the official misconduct count is reversed. The charge of official misconduct is

remanded to the Superior Court for retrial with the remaining counts.

*For reversal and remandment*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—7.

*Opposed*—None.