225 N.J. Super. 365 (1988)
542 A.2d 510
STATE OF NEW JERSEY
v.
MARY ANN MAIORANNA, CHARLES OGLESBY, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal), Bergen County.
Decided April 4, 1988.
*366 Dennis Kwasnik, Asst. Prosecutor on behalf of the State.
*367 Roger W. Breslin, Jr., argued the cause for defendant (Beattie, Padovano, Breslin, Dunn & Kafafian,).

DECISION ON MOTION TO DISMISS COUNT TWO OF INDICTMENT
MOSES, J.S.C.
On January 4, 1988, a grand jury found probable cause that Mary Ann Maioranna had engaged in official misconduct when she approved the payment of $10,000.00 in Community Development funds for the benefit of Saddle Brook to the codefendant Charles Oglesby without the "necessary consent" of the Saddle Brook municipal council. The $10,000.00 payment was allegedly disbursed before any services were received, (a written study presumably prepared by Mr. Oglesby on the revitalization of Saddle Brook's downtown area), contrary to Bergen County Development procedures. Maioranna also authorized the $10,000.00 payable to Charles Oglesby rather than to the Township of Saddle Brook, contrary to policies of both Community Development and the Township of Saddle Brook. Ms. Maioranna was formerly Executive Director of the Bergen County Office of Community Development.
Defendant Maioranna's main argument in support of her motion to dismiss Count Two is that the "informally established administrative procedures and policies", which she allegedly breached, do not create "official functions" and were not duties imposed by law, as required by N.J.S.A. 2C:30-2.
The State argues that Ms. Maioranna breached an inherent obligation to ensure that the moneys entrusted to her care were properly disbursed. It contends that such conduct, although not amounting to a violation of state "law", comports with the general definition of common law misconduct, and is indeed criminal.
Count Two alleges that:
"between January 23, 1987 and January 28, 1987, the defendant, as Director of the Bergen County Community Development Program, with purpose to *368 obtain funds belonging to the Township of Saddle Brook for the benefit of Charles Oglesby, committed acts relating to her office but constituting an unauthorized exercise of her official functions knowing such acts to be unauthorized, to wit:
1. She approved the payment of $10,000.00 in funds designated for the benefit of the Township of Saddle Brook to Charles Oglesby without the necessary consent of the governing body of the Township of Saddle Brook;
2. She authorized this payment of funds for a written study to be performed by Charles Oglesby without having first received such study, contrary to Bergen County Community Development procedures;
3. She authorized payment of a $10,000.00 check directly to Charles Oglesby rather than to the Township of Saddle Brook, contrary to the Bergen County Community Development procedures; contrary to the provisions of N.J.S. 2C:30-2, and against the peace of this State, the Government and dignity of the same."
The trial judge's discretion to dismiss an indictment will only be exercised on the "clearest and plainest" ground. State v. Weleck, 10 N.J. 355, 364 (1952). This is because the purposes of an indictment are 1) to enable the defendant to know that against which he must defend, 2) to prevent double jeopardy, and 3) to preclude the substitution by a trial jury of an offense for which the grand jury has not indicted. State v. Spano, 128 N.J. Super. 90 (App.Div. 1973), aff'd 65 N.J. 566 (1974). The indictment also serves to inform the court of the facts alleged so that it may decide whether they are sufficient in law to support a conviction if one should be obtained. State v. Winne, 12 N.J. 152, 178 (1953).
N.J.S.A. 2C:30-2 reads as follows:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized or he is committing such act in an unauthorized manner; or
b. He knowingly refrains from performing a duty which is imposed on him by law or is clearly inherent in the nature of his office.
Prior to the adoption of the Criminal Code in 1979, the offense of official misconduct, now combined in N.J.S.A. 2C:30-2(a) and (b), existed under both statutory and common law. See N.J.S.A. 2A:135-1 (Neglect of Official Duty) (repealed) and N.J.S.A. 2A:85-1 (denominating as misdemeanors all *369 offenses of an indictable nature at common law, not otherwise expressly referred to therein) (also repealed). See also N.J.S.A. 2C:1-5 (eliminating all common law crimes) and generally Volume II, Commentary, Final Report of the New Jersey Criminal Law Revision Committee, to N.J.S.A. 2C:30-2 at 291-292.
"Misconduct in office" means any act or omission in breach of a duty of public concern by one who has accepted public office; it is also defined as the violation of a prescribed duty to the public for which the offender may be indicted at common law. State v. Furey, 128 N.J. Super. 12, 17-18 (App.Div. 1974).
Definitions of misconduct in office are necessarily broad. State v. Begyn, 34 N.J. 35 (1961). Culpability may attach to 1) any act which is wrongful in itself  malfeasance, or 2) any lawful act performed in an unlawful manner  misfeasance, or 3) omission to do any act which is required of him by the duties of his office  nonfeasance. However, the precise sub-labeling is not always found and is not requisite. Id. at 49. The gravamen of the charge of misconduct is malfeasance  the doing of an act which is positively unlawful or wrong.
Defendant relies heavily on State v. Duble, 172 N.J. Super. 72 (App.Div. 1979), where the Appellate Division reversed the conviction of a Trenton police officer for neglect of duty under N.J.S.A. 2A:135-1 (repealed). This law was not revised by the Criminal Code in 1979, nor is it the precursor of the "new" misconduct statute, N.J.S.A. 2C:30-2. The source statute referred to by the new law is N.J.S.A. 2A:85-1.
In Duble the defendant was charged with possession of heroin, which was found in his private locker, and with neglect of official duty for failing to file a written report relating to the CDS. He was acquitted of the possession charge but convicted of neglect of official duty. He appealed the conviction on the grounds that the statute under which he was indicted only proscribed "neglect to perform any duty imposed upon him by law". The Appellate Court agreed with defendant that the *370 written report requirement was "purely administrative in character, affecting only the internal operation of the department and the conduct of its members. For breach thereof disciplinary proceedings may be available." Id. at 74.
Duble is inapplicable to the present case. The indictment in Duble charged the statutory offense of Neglect of Official Duty, 2A:135-1, which constituted a misdemeanor when "a public officer willfully refuses or neglects to perform any duty imposed upon him by law" [emphasis added]. The phrase "duty imposed upon him by law" is indeed present in 2C:30-2(b), but there is also an alternative phrase in the subsection which follows: "or is clearly inherent in the nature of his office". Defendant ignores the last phrase. Her interpretation of the statute would render this last phrase ineffective. Such constructions should be avoided. State v. Congdon, 76 N.J. Super. 493 (App.Div. 1962).
The instant indictment charges an offense "contrary to the provisions of N.J.S.A. 2C:30-2, without citing any subsection. It is obvious, however, that the language, "relating to her office but constituting an unauthorized exercise of her official functions" tracks the language of subsection (a) verbatim.
It is a general principle of statutory construction that words of a statute must not be considered to exist in a vacuum, without reference to relevant policy considerations, or without regard for words of the balance of the statute. That rubric applies here. Matter of Hotel and Restaurant Employees and Bartenders Intern. Union Local 54, 203 N.J. Super. 297 (App. Div. 1985), certif. den. 102 N.J. 352 (1985), cert. den. 475 U.S. 1085, 106 S.Ct. 1467, 89 L.Ed.2d 723 (1986). "When construing statutes which prescribe the duties and obligations of public officials, we recognize it is a practical impossibility to spell out with specificity every duty of the office and, therefore, courts take judicial notice of the duties which are inherent in the very nature of the office". State v. Deegan, 126 N.J. Super. 475, 491-492 (App.Div. 1974).
*371 The Court rejects defendant's argument that the State's reliance on Ms. Maioranna's "inherent duties" amounts to an attempt to amend the indictment to charge a "new or different" crime than that found by the grand jury. The fact that the indictment employs the affirmative "duty to act" language of subsection (a) does not prevent the State from also alleging "omissions to act", in violation of subsection (b). N.J.S.A. 2C:30-2 is intended to consolidate the law as to both malfeasance and non-feasance by public officials, and is more than simply a recodification of 2A:135-1. It was meant to include all those offenses constituting misconduct at common law under 2A:85-1.
The language of 2C:30-2(a) evinces a clear legislative intent to make the crime of official misconduct applicable in situations where the actor undertakes or assumes to perform certain public duties by virtue of his or her office and as if incident to the office. If the actor then willfully engages in unlawful behavior which violates the duties undertaken or assumed, "he will not be heard to say that such duties were not required by or incidental to the office". State v. Silverstein, 41 N.J. 203 (1963); State v. Weleck, 10 N.J. 355 (1952) (allegation of source and duty not always necessary where the duties arise "out of the very nature of the office"); State v. Stevens, 203 N.J. Super. 59, 65 (Law Div. 1984) ("No special or private law prescribed Stevens's duties. They are inherent duties of his office which may be judicially noticed").
Therefore, N.J.S.A. 2C:30-2 has to be read in pari materia. "Official functions" described in section (a) has to include those duties which are imposed by law or are clearly inherent or implicit in the nature of the office, in accordance with section (b) of the same statute.
When applying the foregoing analysis to the case at bar, the question becomes whether the administrative regulation establishes a duty imposed by law or reflects a duty clearly inherent in the office. May it also constitute an "official *372 function" of the Executive Director of Community Development, a breach of which exposes the actor to criminal culpability?
The regulation, (designated GJ-1 before the grand jury), established procedures to be followed in the disbursement of Community Development funds. Although GJ-1 was not a state "law", it was a procedure assumed and voluntarily undertaken by virtue of defendant's position as Executive Director of Community Development. If defendant had no duty to follow the procedures promulgated in her own name, then she and codefendant Oglesby, or any other contractor, for that matter, could sign vouchers authorizing disbursements of thousands of dollars without any fiscal control, fund accounting procedures or even the guarantee that the services had been rendered. Ms. Maioranna, as the Executive Director, had the official power, ability and responsibility to prevent such occurrences and to protect the public fisc, because it was her final authorization that released Community Development funds. This is clearly and sufficiently an "official function", as well as a duty inherent in the nature of the office. "The power to act imports a duty to act when the public interests suggest to the public officials that something should be done." McDonough v. Roach, 35 N.J. 153, 157 (1961).
Such an abrogation of duties was never intended by the Secretary of Health and Human Services, who was delegated the authority to administer the Block Grant Program to the states or by the Bergen County Board of Chosen Freeholders, who administered the program locally. See 42 U.S.C. § 9901 et seq. (Community Services Block Grant Program, which mandates that the "State shall provide that fiscal control and fund accounting procedures will be established as may be necessary to assure the proper disbursal of and accounting for Federal funds paid to the State") and Freeholder resolution # 102 (GJ-6) calling for "duly authorized vouchers" when disbursements are made of Community Development funds. These provisions, taken together, impose upon defendant as Executive *373 Director the inherent duty to preserve and not permit misuse of public funds. Deegan, 126 N.J. Super. at 490. "That which is clearly implied is as much a part of the law as that which is expressed". Cammarata v. Essex County Park Commission, 46 N.J. Super. 262 (App.Div. 1957), affirmed 26 N.J. 404 (1958).
It is not the administrative regulation itself which holds the force of law, but those duties which the regulation memorializes. The regulation in this case was necessarily incident to defendant's fundamental duty as a trustee of the public weal. "It cannot be emphasized that the censured conduct appertains to public officials, who are `under an inescapable obligation to serve the public with the highest fidelity.'" Driscoll v. Burlington-Bristol Bridge Co., 8 N.J. 433, 474 (1952), cert. den. 344 U.S. 838, 73 S.Ct. 25, 97 L.Ed. 652, reh. den. 344 U.S. 888, 73 S.Ct. 181, 97 L.Ed. 687 (1952). Public officials are charged with the obligation to lawfully perform fundamental duties of their office. State v. Weleck, 10 N.J. 355, 366-369 (1952). Therefore, even without GJ-1, which simply detailed disbursement procedures, such duties were imposed when Ms. Maioranna took office. In the Burlington-Bristol Bridge case the Supreme Court commented on public officials holding positions of trust.
They stand in a fiduciary relationship to the people whom they have been elected or appointed to serve. [Footnotes omitted] As fiduciaries and trustees of the public weal they are under an inescapable obligation to serve the public with the highest fidelity. In discharging the duties of their office they are required to display such intelligence and skill as they are capable of, to be diligent and conscientious, to exercise their discretion not arbitrarily but reasonably, and above all to display good faith, honesty and integrity. [Footnotes omitted] They must be impervious to corrupting influences and they must transact their business frankly and openly in light of the public scrutiny so that the public may know and be able to judge them and their work fairly.
These obligations are not mere theoretical concepts or idealistic abstractions of no practical force and effect; they are obligations imposed by the common law on public officers and assumed by them as a matter of law upon their entering public office. The enforcement of these obligations is essential to the soundness and efficiency of our government, which exists for the benefit of the people who are its sovereign. Constitution of 1947, art. I par. 2. The citizen is not at the mercy of his servants holding positions of public trust nor is he *374 helpless to secure relief from their machinations except through the medium of the ballot, the pressure of public opinion or criminal prosecution. [emphasis added]
8 N.J. at 475-476.
Based on the foregoing, the Court concludes that fact that the regulation was not a "law" does not make this indictment palpably deficient of evidence establishing probable cause of official misconduct in violation of 2C:30-2. Therefore, the Motion for Dismissal is DENIED.