953 A.2d 491 (2008)
402 N.J. Super. 177
STATE of New Jersey, Plaintiff-Appellant,
v.
Robert K. THOMPSON, Harold E. Fox, David M. Gavin, Carmela L. Thompson, Karen M. Wood, Janice A. Eckstein, Remy P. Devarenne, Sr., and Sandra L. Bielanski, Defendants-Respondents.
No. A-2279-07T4
Superior Court of New Jersey, Appellate Division.
Argued May 29, 2008.
Decided August 1, 2008.
*493 Thomas R. Clark, Deputy Attorney General, argued the cause for appellant (Anne Milgram, Attorney General, attorney; Mr. Clark and Steven J. Zweig, Deputy Attorney General, of counsel and on the brief).
Robert S. Bonney, Jr., Freehold, argued the cause for respondents (Lomurro, Davison, Eastman & Munoz, P.A., attorneys for respondent Harold E. Fox; Mr. Bonney and Carrie A. Lumi, of counsel and on the joint brief).
Edwards Angell Palmer & Dodge, LLP, Madison, attorneys for respondent Robert K. Thompson (Eric Tunis, of counsel and on the joint brief).
Thomas G. Roth, attorney for respondent Sandra L. Bielanski (Mr. Roth, of counsel and on the joint brief).
Triarsi, Betancourt, Walsh & Wukovits, attorneys for respondent David M. Gavin (Steven F. Wukovits, of counsel and on the joint brief).
Stark & Stark, attorneys for respondent Janice A. Eckstein (Paul W. Norris, Lawrenceville, of counsel and on the joint brief).
Szaferman, Lakind, Blumstein, Blader & Lehmann, P.C., attorneys for respondent Karen M. Wood (Robert E. Lytle, Lawrenceville, of counsel and on the joint brief).
Hanlon, Dunn & Robertson, attorneys for respondent Remy P. deVarenne, Sr. (Gerard E. Hanlon, Morristown, of counsel and on the joint brief).
Bruce L. Throckmorton, Trenton, attorney for respondent Carmela L. Thompson (Mr. Throckmorton, of counsel and on the joint brief).
Before Judges CUFF, LISA and LIHOTZ.
The opinion of the court was delivered by
*494 LISA, J.A.D.
By leave granted, the State appeals from an order dismissing thirty-six counts of a forty-two-count indictment. Thirty-two of the dismissed counts charged six State employees and two employees of an outside vendor contracting with the State with official misconduct, N.J.S.A. 2C:30-2; the remaining four counts charged two of the State employees and the two employees of the outside vendor with engaging in a pattern of official misconduct, N.J.S.A. 2C:30-7.[1] We affirm in part and reverse in part.

I
The indictment was the result of an investigation by the Division of Criminal Justice into the receipt of personal benefits by six Department of the Treasury employees from the sales director (Sandra L. Bielanski) and the senior vice president of sales (Remy P. deVarenne, Sr.), of OSI Collection Services, Inc., a vendor engaged by the State to collect tax deficiencies and delinquencies. OSI allegedly provided these benefits in the form of lunches, dinners, drinks, entertainment, spa treatments, and golf outings, over the course of about five years between 1999 and 2004.
The Department of the Treasury (Department) manages the receipt and payment of State funds, and has under its administrative jurisdiction the Division of Taxation (which collects the State's taxes), the Division of Revenue (which processes the State's receipts and manages the State's accounts receivable), and the Division of Purchase and Property (which oversees the procurement of items for the State's agencies and employees). The State employees charged in the indictment, and their positions during the relevant period, are Robert K. Thompson (Director of the Division of Taxation), his wife, Carmela L. Thompson[2] (manager of the Division of Taxation's word processing unit), Harold E. Fox (Deputy Director of the Division of Taxation), David M. Gavin (Assistant Director of Compliance in the Division of Taxation), Karen M. Wood (Assistant Director of Technical Services in the Division of Taxation), and Janice A. Eckstein (Assistant Director of Revenue Management in the Division of Revenue).
The trial judge dismissed the thirty-six counts now before us based upon legal insufficiency. Accordingly, it was unnecessary for him to reach defendants' arguments that the evidence presented to the grand jury was factually insufficient or that the indictment should be dismissed on grounds of selective prosecution. These issues should be determined in the first instance in the trial court. Accordingly, on those counts that we order reinstated, defendants may again present these issues for determination upon remand.
Through a competitive bidding process, the Department outsources the collection of its tax deficiencies and delinquencies. OSI's predecessor was the successful bidder on the tax delinquency contract in 1995, which continued in effect, with nine extensions, through July 31, 2004. In 1999, OSI's predecessor was awarded the tax deficiency contract, which was extended five times and remained in effect through February 28, *495 2006. Both contracts prohibited the vendor from giving items of value to State employees.
When the State submitted the tax delinquency contract to a new round of bidding in May 2004, the State received proposals from three bidders, including OSI. The contract was awarded to OSI. We will later discuss in more detail the circumstances of this award.
Twenty-eight of the counts before us can be grouped into fourteen "pairs." These counts alleged that OSI employees provided benefits to the State employees on specified dates and in specified amounts, of the nature we have previously described. The State treated each of these exchanges of benefits as two separate incidents. Thus, one count in each of these pairs charged one or more State employees and an OSI employee[3] (as an accomplice under N.J.S.A. 2C:2-6)[4] with the receipt of the benefit. Then, in the corresponding other count within that pair, the State charged the State employee(s) with failure to report the receipt of the benefit to the appropriate ethics authority. We will refer to these as "receiving counts" and "failure to report counts."
All of the receiving and failure to report counts charge defendants with violation of N.J.S.A. 2C:30-2b, which is committed by refraining from performing an official duty with a purpose to obtain a benefit or to deprive another of a benefit. To a large extent, the State relied upon the Department's Code of Ethics as the source of the duty allegedly breached by the State employees. The receiving counts generally charged the State employees with receiving a benefit from OSI (dinner, a golf outing, etc.) in violation of their duty to refrain from accepting such benefits, with the purpose to obtain that very benefit. The corresponding failure to report counts generally charged that the State employees refrained from performing their duty to report the receipt of the benefits identified in the receiving count with the purpose to deprive the Department of a benefit, namely the opportunity to enforce the New Jersey Conflicts of Interest Law and the Department's Code of Ethics.[5]
Because of the multiplicity of counts of official misconduct against them, Thompson and Gavin were also each charged with a count of engaging in a pattern of official misconduct, N.J.S.A. 2C:30-7, as were Bielanski and deVarenne, in their capacity as accomplices, N.J.S.A. 2C:2-6.
In addition to the fourteen pairs of receiving and failure to report counts and the four counts of engaging in a pattern of official misconduct, there are four additional counts before us that were dismissed by the trial judge. Each of the remaining four counts charged State employees with *496 official misconduct in connection with their alleged wrongful failure to recuse themselves under specified circumstances. We will now describe those counts.
Count seventeen charged Thompson with official misconduct. Although the charge was under N.J.S.A. 2C:30-2b, the allegation was unlike those in the receiving and failure to report counts. In December 2002, an OSI employee submitted a letter to the State questioning the legality of OSI's billing practices with the State. The employee asked for a full investigation. The Chief of Staff of the Department forwarded the letter to Thompson, with the question, "Is this something that you think we should follow-up on?" Thompson forwarded the letter to Fox with the subject line "FYI." The next day, Thompson had lunch with deVarenne at a Trenton restaurant to discuss the "employee complaint." DeVarenne paid for the lunch. The next day, Bielanski responded to the accusation in an email, which Thompson forwarded to Fox, again with the subject line, "FYI."
The State contended that Thompson involved himself in the matter through the lunch discussion with deVarenne, Thompson "refrained from performing his duty to recuse himself from the process of determining whether any action should be taken" regarding the allegations of OSI's improper billing, and Thompson "refrained from performing his duty to direct the allegation to another employee of the Department of the Treasury who would not be perceived to be under a conflict of interest for evaluation."
The remaining three counts all charged violations of N.J.S.A. 2C:30-2a, which makes a public servant guilty of official misconduct who commits an unauthorized exercise of his or her official functions with a purpose to obtain a benefit for himself or herself or another or to deprive another of a benefit. Count eighteen charged Thompson; count thirty-five charged Fox and Gavin; and count thirty-six charged Gavin. The general thrust of these three counts alleged that the receipt by Thompson, Fox or Gavin of certain benefits from OSI created the impression of a conflict of interest, and that these three individuals nonetheless acted on matters involving OSI when they should have recused themselves pursuant to the Department's Code of Ethics. Unlike the seventeenth count, alleging only that Thompson failed to recuse himself, these three counts alleged a failure to recuse and an additional affirmative act.
Count eighteen alleged that Thompson "did commit an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act was unauthorized or he was committing such act in an unauthorized manner," namely, knowing that OSI had given him things of value in the past and with the purpose to obtain additional things of value, Thompson "recommended that a State of New Jersey contract with OSI Collection Services, Inc., be extended six months." According to the evidence presented to the grand jury, OSI's tax deficiency contract was scheduled to expire at the end of August 2005. The Division of Purchase and Property requested a three month extension of the contract. However, Thompson suggested a six month extension. An extension was deemed appropriate because bids would not be received for the new contract until after the end of the current contract, time was needed for the evaluation and award process, and, if a new company was selected, additional start-up time would be required because of training and equipment issues. The Division of Purchase and Property accepted Thompson's recommendation. The State contends that Thompson should have recused himself and should not have undertaken *497 discussions over the extension of the contract.
Count thirty-five charged that Gavin and Fox, each responsible in some degree for the enforcement of the tax laws, "participated in the selection of other State government employees to serve on an Evaluation Committee, which committee was to evaluate bids to later provide the services then provided by OSI Collection Services, Inc., and expecting that OSI Collection Services, Inc., would submit a bid to continue to provide those services," despite the prior receipt of gifts or benefits and with the purpose to receive future benefits. As we have previously noted, OSI's tax delinquency contract expired at the end of July 2004. The State issued a request for proposals (RFP) several months prior to that date. An evaluation committee must be created to review the bids, evaluate them, and recommend that the State award the contract to a particular vendor. The State presented evidence to the grand jury to the effect that Gavin and Fox participated in the selection of the members of the evaluation committee.
Count thirty-six alleged that Gavin, "in the evaluation of responses to the request for proposals . . . participated in the formulation of specifications for the request for proposals for the rebidding of the tax delinquency contract," despite the prior receipt of benefits and with the purpose to receive future benefits. This count further alleged that in addition to the expectation that he would receive future benefits, Gavin also acted with a purpose to obtain a benefit for OSI.
The evidence on this count indicated that Gavin urged the inclusion of two unusual conditions in the RFP: (1) that the winning bidder maintain an office within twenty-five miles of Trenton, and (2) that the winning bidder guarantee a minimum revenue to the State. According to an employee of the Division of Purchase and Property, these specifications "raised a red flag" because of the potential chilling effect on competition and because they tended to favor the incumbent. Ultimately, the minimum revenue requirement proposed by Gavin was inserted in the RFP, and the geographic limitation was extended to a forty-mile radius.
The State received three bids on the tax delinquency contract. The committee rejected one bid as nonresponsive because the bidder did not claim to be able to meet the minimum revenue requirement. OSI did not submit the lowest bid. Its bid of about $10.3 million exceeded that of the remaining bidder by about $1.5 million. However, the Division of Purchase and Property does not necessarily award a contract to the lowest bidder, but to "the lowest responsible bidder, price and other factors considered." The committee recommended the award of the contract to OSI because of its concern that the other bidder "did not address the minimum revenue guarantee within its proposal." The Division of Purchase and Property accepted the committee's recommendation.

II
Upon return of the indictment, all defendants filed motions to dismiss. Defendants argued that "under the State's theory you've essentially criminalized every ethical violation." Defendants argued that the State's approach conditioned culpability not on intent but on the unclear application of the Conflicts of Interest Law's vague admonition to avoid "the appearance or the impression" of impropriety. They argued that the law did not intend to proscribe the receipt of a gift from a private entity "unless the public servant intended to get it by deliberately not performing the affirmative official function or duty that he had," with corrupt motive. *498 With respect to the receiving and failure to report counts, they argued that the State perverted the statutory language through the conceptualization of the "misconduct" as the failure to perform a "duty" to "refrain from accepting" various benefits. With respect to counts charging affirmative acts under N.J.S.A. 2C:30-2a, defendants primarily argued that the evidence presented to the grand jury was insufficient to establish a link between the alleged receipt of a benefit and the alleged act of misconduct.
The trial judge generally accepted the defense position. In his written decision, the judge did not distinguish between the subsection a and b counts, and did not specifically address counts seventeen, eighteen, thirty-five and thirty-six. His decision primarily focused on the multiple pairs of receiving and failure to report counts. Because the judge determined that all of the official misconduct counts would be dismissed, it followed that the four counts charging Thompson, Gavin, Bielanski and deVarenne with engaging in a pattern of official misconduct would also be dismissed.
The judge recognized that the conduct of the six State defendants fell within the purview of the Conflicts of Interest Law and the Department's Code of Ethics. These defendants acknowledged receipt of the Code of Ethics, and were thus on notice of its provisions. The judge opined that these individuals "were also subject to rules clearly inherent in the nature of their public office."
The judge noted that the Department's Code of Ethics required the State employees to decline or remit any gift or item of value offered by an outside vendor, and to report any such incident to the Ethics Liaison Officer. Thus, by accepting lunches, entertainment, and other benefits from OSI, the judge concluded that "there was sufficient evidence presented to the Grand Jurors to demonstrate a prima facie case of violation of the Department of the Treasury Code of Ethics by the public servants."
However, the judge was of the view that the commission of an ethical violation, standing alone, could not provide the factual basis for a criminal prosecution. He concluded that the official misconduct statute "is aimed at preventing abuse of government power for personal benefit. . . . [T]here is an absence of cases of official misconduct based upon ethics code violations alone." Referring to the holdings in various New Jersey and New York cases, the judge concluded that "[t]he State's theory putting forth this indictment is unique, without precedent, and this interpretation the Court finds, is beyond the scope of the statute and the intent of the Legislature[.]"
As an alternative ground for his decision, the judge relied on the "void for vagueness" doctrine, which requires the law to apprise a defendant with sufficient clarity of the criminality of certain conduct. The judge found that the State's expansion of the term "duty," as it appears in N.J.S.A. 2C:30-2b, to include the general standards of conduct applicable to public officials, found at N.J.S.A. 52:13D-23(e), failed this test. The judge commented that "[i]f the Legislature wanted to criminalize a violation of general ethic[al] standards it would have done so." The judge referred to a 2003 amendment to N.J.S.A. 2C:27-10, which provides that a public servant commits a crime only if he or she accepts or receives a benefit "to influence the performance of an official duty or to commit a violation of an official duty." On the contrary, a person can be guilty of a crime for the conferral of "any benefit not allowed by law to a public servant," whether or not there was an intent by the *499 private actor to influence official action. N.J.S.A. 2C:27-11b.

III
We granted the State's motion for leave to appeal from the dismissal of the thirty-six counts. See R. 2:3-1(b)(1).
The State argues that the trial court's conclusions lack support in our prior official misconduct case law, and that an ethics violation can support a criminal conviction. It argues that the crime of official misconduct "concerns a defendant's breach of public trust . . . violating a duty to the public with the purpose of abusing the trust reposed in the actor." The State challenges the trial court's finding that the duty imposed on defendants was unclear. Finally, citing State v. Cox, 150 N.J.Super. 599, 376 A.2d 236 (Law Div.1977), aff'd o.b., 160 N.J.Super. 28, 388 A.2d 1272 (App.Div.1978), and other cases, the State contends that the more specific treatment of an official's receipt of gifts in other statutes does not preclude prosecution under the more general official misconduct statute.
Defendants allege that the Legislature's repeal of prior attempts to criminalize ethics violations evidences "a clear rejection of the State's theory of prosecution in this case." Defendants argue that "[t]here is absolutely no evidence . . . that the Legislature intended to implicitly incorporate the ethical standards set forth in the statute and in the various ethical codes promulgated pursuant thereto into New Jersey's Criminal Code."
With respect to the receiving and failure to report counts, we agree with defendants that reliance on the Conflicts of Interest Law alone cannot provide the basis to impose criminal sanctions. We disagree, however, with the trial court's dismissal of counts seventeen, eighteen, thirty-five and thirty-six.
"The crime of official misconduct serves to insure that those who stand in a fiduciary relationship to the public will serve with the highest fidelity, will exercise their discretion reasonably, and will display good faith, honesty, and integrity. These are the obligations which every public officer assumes as a matter of law upon entering office." State v. Schenkolewski, 301 N.J.Super. 115, 145-46, 693 A.2d 1173 (App.Div.), certif. denied, 151 N.J. 77, 697 A.2d 549 (1997). The common law vaguely interpreted "official misconduct" to include:
1) any act which is wrongful in itself malfeasance, or 2) any lawful act performed in an unlawful mannermisfeasance, or 3) omission to do any act which is required of him by the duties of his officenonfeasance.
[Hinds, supra, 143 N.J. at 545, [674 A.2d 161] (quoting State v. Maioranna, 225 N.J.Super. 365, 369, [542 A.2d 510] (Law Div.1988), aff'd in part, remanded in part on other grounds, 240 N.J.Super. 352, [573 A.2d 475] (App.Div.1990), certif. denied, 127 N.J. 327, [604 A.2d 601] (1991)).]
The Code of Criminal Justice abolished the use of common law crimes in 1979. Ibid. The current statutory definition of official misconduct, however, follows the common law approach. Modeled after a New York provision,[6] our statute provides:
A public servant is guilty of official misconduct when, with purpose to obtain a benefit for himself or another or to injure or to deprive another of a benefit:
a. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing *500 that such act is unauthorized or he is committing such act in an unauthorized manner; or
b. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.
Official misconduct is a crime of the second degree. If the benefit obtained or sought to be obtained, or of which another is deprived or sought to be deprived, is of a value of $200.00 or less, the offense of official misconduct is a crime of the third degree.
[N.J.S.A. 2C:30-2.]
To charge an offense under subsection a, the State must produce evidence that the defendant is a public servant; the defendant committed "an act relating to his office" knowing it was unauthorized; and the defendant committed the act with the purpose to benefit himself or another, or to injure another. State v. Bullock, 136 N.J. 149, 153, 642 A.2d 397 (1994); Schenkolewski, supra, 301 N.J.Super. at 143, 693 A.2d 1173. The statute does not require that the predicate act of misconduct be criminal in nature. State v. Parker, 124 N.J. 628, 640, 592 A.2d 228 (1991), cert. denied, 503 U.S. 939, 112 S.Ct. 1483, 117 L. Ed.2d 625 (1992). But, we look to the scope of the defendant's apparent authority to consider whether the act of misconduct sufficiently relates to the defendant's office. Schenkolewski, supra, 301 N.J.Super. at 143, 693 A.2d 1173.
As we explained in Schenkolewski:
The crime is not proven by showing misconduct committed by a person who happens to be a public officer; that is, the misconduct must be connected to that person's official duties. State v. Weleck, 10 N.J. 355, 365, 91 A.2d 751 (1952). Moreover, the indictment charging official misconduct must allege both the prescribed duty of the office and facts constituting a breach thereof. The duties of office may arise by some special law or provision of municipal charter, may be imposed by an act of the Legislature, or may arise out of the nature of the office itself. Id. at 366, 91 A.2d 751.
[Id. at 144, 693 A.2d 1173.]
The recognition in Schenkolewski and Weleck that an act of misconduct must relate to a public servant's "duties," and that these duties arise from various sources, including "the nature of the office itself," reflects the subtle blurring of the two subsections. We said in Schenkolewski that "[o]fficial functions include those duties which are imposed by law as well as those which are clearly inherent in and naturally arise from the nature of the office." Id. at 143, 693 A.2d 1173.
Thus, it is not surprising that our case law addressing the "inherent duties" of public servants has an effect on the subsection a analysis, even though that phrase is found in subsection b. For example, in Schenkolewski, the State sought to prosecute the chairman of the Lakewood zoning board because he "did . . . commit acts relating to his office in an unauthorized manner and did knowingly refrain from performing duties which were imposed upon him by law and were clearly inherent in the nature of his office." Id. at 144, 693 A.2d 1173. The specific language alleged that the chairman received money "in exchange for" his exercise of influence over the municipality's resolution of a zoning application. Id. at 144-45, 693 A.2d 1173. We noted that the chairman lacked authority to participate in the zoning board's decisionmaking, with his vote or his influence, in the face of a clear conflict of interest. Id. at 145, 693 A.2d 1173. We upheld the indictment because of the proof *501 of an affirmative unauthorized wrongful act.
The State's approach on appeal reflects the general trend to invoke subsection a to prosecute official misconduct cases. The thrust of its argument concerns the trial court's dismissal of those particular counts, with little mention of the subsection b counts. It cites an array of cases in which the finding of official misconduct stemmed from an affirmative unauthorized exercise of the defendant's official functions. See, e.g., Parker, supra, 124 N.J. at 641, 592 A.2d 228 (finding that the defendant teacher's exhibition of sexual materials to students was unauthorized); State v. Kollarik, 22 N.J. 558, 563-64, 126 A.2d 875 (1956) (relying on the public official's use of city labor to perform private tasks to affirm a misfeasance conviction); State v. Furey, 128 N.J.Super. 12, 21, 318 A.2d 783 (App. Div.) ("A public official acts corruptly and is guilty of misconduct in office when he has an undisclosed interest in a venture which comes before the body of which he is a member, and he acts in favor of that interest through the office he holds." (emphasis added)), certif. denied, 65 N.J. 578, 325 A.2d 711 (1974); State v. Deegan, 126 N.J.Super. 475, 492, 315 A.2d 686 (App. Div.) (affirming conviction on the basis of the defendants' unauthorized approval of pensions without proper and faithful inquiry into the facts), certif. denied, 65 N.J. 283, 321 A.2d 244 (1974); State v. Gleitsmann, 62 N.J.Super. 15, 26-27, 161 A.2d 747 (App.Div.) (concerning the defendant officer's unauthorized use of public telephone and police car for personal business), certif. denied, 33 N.J. 386, 164 A.2d 849 (1960); Maioranna, supra, 225 N.J.Super. at 368-74, 542 A.2d 510 (denying motion to dismiss indictment charging misconduct in the defendant's disbursement of money without proper authorization); State v. Stevens, 203 N.J.Super. 59, 68, 495 A.2d 910 (Law Div. 1984) (unauthorized strip search sufficed to find official misconduct, based on a police officer's duty to obey the law); State v. Gregorio, 186 N.J.Super. 138, 148-49, 451 A.2d 980 (Law Div.1982) (permitting the prosecution of state senator under the statute criminalizing the filing of a false financial statement).

IV
Against this legal background, we now address the sufficiency of the subsection a counts and count seventeen. The State treats as a group the three subsection a counts (eighteen, thirty-five and thirty-six) and the one "stand-alone" subsection b count (seventeen). It argues that "[i]f one accepts that defendants Robert Thompson, Fox and Gavin had received gifts, then they were under undisclosed conflicts of interest when they participated in discretionary decision-making, as alleged in Counts Seventeen, Eighteen, Thirty-Five and Thirty-Six."
Count eighteen alleges that Thompson recommended the extension of OSI's contract for six months, with the purpose to obtain additional benefits from Bielanski, deVarenne or other OSI employees. His action was an unauthorized exercise of his official functions because of the conflict of interest in his handling of matters involving OSI. Here, the conflict and the substance of the discretionary decision do not raise the same concerns as those in Schenkolewski, but the fact remains that an unauthorized official act was alleged to support the official misconduct charge.
The same conclusion attaches to counts thirty-five and thirty-six. The State presented evidence that, despite an alleged conflict of interest, Gavin and Fox played a role in the selection of the evaluation committee and the determination of the winning bidder, and that Gavin imposed *502 material conditions on the award of the delinquency contract, to the effect that the incumbent, OSI, may have enjoyed a competitive advantage over the other bidders. Even assuming the contract benefited the Department, the grand jury could conclude that these two Department employees exercised their influence over a matter in which they had a conflict of interest. These unauthorized acts, allegedly performed with a purpose to obtain benefits for themselves, and, as to count thirty-six also to obtain a benefit for OSI, could form the basis for criminal liability.
Count seventeen, charged under subsection b, presents a closer question. That count deals with the handling of a false billing allegation made by an OSI employee. It charges that Thompson, with a purpose to obtain additional gifts from OSI, refrained from performing the duty to recuse himself from the process of determining whether any actions should be taken regarding the allegation, and to designate another employee to handle the matter. The count charges that the source of the duty was the Code of Ethics or that it was clearly inherent in the nature of Thompson's office. The State did not expressly allege that Thompson used his influence to affect the outcome of the over-billing allegation, although it implies that because Thompson served as a conduit for the complaint, had lunch the next day with deVarenne, followed promptly by Bielanski's response to the complaint, that Thompson played a role in the handling of the complaint. Although the State did not charge such unauthorized conduct by Thompson under subsection a, in these circumstances the failure to recuse is tantamount to an allegation that Thompson did participate in directing the investigation. Therefore, notwithstanding the absence of an affirmative allegation of corresponding unauthorized action, the allegation is sufficient to expose Thompson to criminal liability for official misconduct.
Therefore, we conclude that counts seventeen, eighteen, thirty-five and thirty-six should be reinstated.

V
We now address the pairs of receiving and failure to report counts brought under N.J.S.A. 2C:30-2b. We have previously mentioned the three elements required to establish a violation of subsection a. For a subsection b violation, the elements are similar: (1) the defendant was a public servant; (2) the defendant knowingly refrained from performing a duty which is imposed upon him or her by law or which is clearly inherent in the nature of the office; and (3) the defendant's purpose in so refraining was to benefit himself or herself or to injure or deprive another of a benefit. Model Jury Charge (Criminal), "Official Misconduct" (N.J.S.A. 2C:30-2) (Revised 9/11/06).
We set forth in their entirety one pair of these counts for purposes of illustration. We have chosen counts forty and forty-one because they are shorter and simpler than most of the others. However, the other pairs of these counts follow the same format and make substantive allegations along the same lines.

COUNT FORTY

(Official Misconduct  Third Degree)

JANICE A. ECKSTEIN

and

SANDRA L. BIELANSKI
between on or about August 1, 2004 and on or about September 29, 2004, at the Township of Edison, in the County of Middlesex, at the City of Trenton, in the County of Mercer, elsewhere, and within *503 the jurisdiction of this Court, acting with the purpose to obtain a benefit for herself or another, the said JANICE A. ECKSTEIN, being a public servant, that is, an Assistant Director in the Division of Revenue, who was then responsible for maintaining complete and accurate accounting records for effective and efficient revenue collection and administration, and having thereby the official functions and duties, among others, to perform all her duties in a legal and proper manner without receipt of unlawful compensation from parties involved in contracts to sell or furnish services to the State, to display good faith, honesty and integrity, and to be impervious to corrupting influences, to conduct herself with undivided loyalty to the public trust, to avoid activities that may appear to give rise to a conflict of interest, and to refrain from activities which interfere with the proper discharge of her duties, did knowingly refrain from performing a duty imposed upon her by law or clearly inherent in the nature of her office, that is, knowing that, under the Department of the Treasury Code of Ethics created pursuant to the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-23, she was prohibited from accepting any gift, favor, service or other thing of value of more than trivial or nominal value under circumstances from which it might reasonably be inferred that the gift, favor, service or other thing of value was given for the purpose of influencing her in the discharge of her official duties, the said JANICE A. ECKSTEIN knowingly refrained from declining a beauty treatment at The Cliffhouse Spa in Ogunquit, Maine, valued at approximately $95, for herself and/or another, offered by the said SANDRA L. BIELANSKI, then an employee of OSI Collection Services, Inc., the vendor then doing business with the New Jersey Department of the Treasury, contrary to the provisions of N.J.S.A. 2C:30-2b and N.J.S.A. 2C:2-6, and against the peace of this State, the government and dignity of same.
[Emphasis added.]

COUNT FORTY-ONE

(Official Misconduct  Second Degree)

JANICE A. ECKSTEIN
on or about September 30, 2004, at the City of Trenton, in the County of Mercer, elsewhere, and within the jurisdiction of this Court, acting with the purpose to injure or to deprive another of a benefit, that is, with purpose to injure the Department of the Treasury or deprive the Department of the Treasury of the opportunity to enforce the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-23, its own Code of Ethics and other related laws, the said JANICE A. ECKSTEIN, being a public servant, that is, an Assistant Director in the Division of Revenue, who was then responsible for maintaining complete and accurate accounting records for effective and efficient revenue collection and administration, and having thereby the official functions and duties, among others, to perform all her duties in a legal and proper manner without receipt of unlawful compensation from parties involved in contracts to sell or furnish services to the State, to display good faith, honesty and integrity, and to be impervious to corrupting influences, to conduct herself with undivided loyalty to the public trust, to avoid activities that may appear to give rise to a conflict of interest, to refrain from activities which interfere with the proper discharge of her duties and to transact the business of her office frankly and openly in the light of public scrutiny so that the public might know *504 and be able to know and judge her and her work fairly, knowingly refrained from performing a duty imposed upon her by law or clearly inherent in the nature of her office, that is, knowing that, under the Department of the Treasury Code of Ethics created pursuant to the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-23, she had a duty to report the receipt of any gift, favor, service or other thing of value to the Ethics Liaison Officer of the New Jersey Department of the Treasury, she refrained from disclosing to the Department of the Treasury Ethics Liaison Officer her receipt of a beauty treatment at The Cliffhouse Spa in Ogunquit, Maine, valued at approximately $95, for herself and/or another, from OSI Collection Services, Inc., a vendor then doing business with the New Jersey Department of the Treasury, contrary to the provisions of N.J.S.A. 2C:30-2b and N.J.S.A. 2C:2-6, and against the peace of this State, the government and dignity of same.
[Emphasis added.]
Unlike the subsection a counts, these counts allege no conduct by the State defendants in exchange for the benefits. Nevertheless, even in the absence of this additional wrongdoing, the State argues that there was a clear legal duty to refuse gifts and to report them to the Ethics Liaison Officer, and, therefore, acceptance of the benefits and failing to report them constituted a breach of this duty.
As we have noted, most of our official misconduct jurisprudence addresses circumstances involving an unauthorized act of misconduct ("malfeasance" or "misfeasance"). The second subsection of the official misconduct statute, however, criminalizes the public official's omission to act. See Hinds, supra, 143 N.J. at 545, 674 A.2d 161 (referring to subsection b as "the `omission to act' phase of this offense"); Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:2-1 (2008). The statute criminalizes the knowing failure to perform a duty. The duty must be "one that is unmistakably inherent in the nature of the public servant's office, i.e., the duty to act is so clear that the public servant is on notice as to the standards that he must meet." Hinds, supra, 143 N.J. at 545-46, 674 A.2d 161 (citation and internal quotation marks omitted). It is within the province of the court to "take judicial notice of the duties which are inherent in the very nature of the office." Deegan, supra, 126 N.J.Super. at 492, 315 A.2d 686.
The overwhelming majority of published cases apply subsection b within the context of a police officer's failure to comply with the inherent duty to report or act against an individual committing a crime. See, e.g., Hinds, supra, 143 N.J. at 546-48, 674 A.2d 161 (failing to arrest an acquaintance for shoplifting); State v. Falco, 60 N.J. 570, 573-74, 292 A.2d 13 (1972) (failing to report tavern fight); State v. Corso, 355 N.J.Super. 518, 524-27, 810 A.2d 1130 (App.Div.2002), certif. denied, 175 N.J. 547, 816 A.2d 1048 (2003); Dunn v. Borough of Mountainside, 301 N.J.Super. 262, 276-78, 693 A.2d 1248 (App.Div.1997); State v. Phelps, 187 N.J.Super. 364, 372, 454 A.2d 908 (App.Div.1983) (failing to report gambling operation), aff'd, 96 N.J. 500, 476 A.2d 1199 (1984). This explains the thorough exploration of the "inherent duties" of police officers in the case law. State v. Cohen, 32 N.J. 1, 9-10, 158 A.2d 497 (1960); State v. Donovan, 132 N.J.L. 319, 320-21, 40 A.2d 546 (Sup.Ct.1945); Stevens, supra, 203 N.J.Super. at 65-66, 495 A.2d 910.
It also supports the conclusion, by reference to the cases cited by the State, that the imposition of criminal sanctions *505 does not follow from a simple conflict of interest. We do not base culpability on the receipt of a gift, in the absence of some additional allegation of wrongdoing. State v. Begyn, 34 N.J. 35, 40-41, 167 A.2d 161 (1961) (pre-Code case recognizing sanitary inspector's duty not to request or accept any gift "under an agreement and understanding that he would act in any particular manner with reference to the affairs of his employer," breach of which constituted misconduct in office); Schenkolewski, supra, 301 N.J.Super. at 144, 693 A.2d 1173 (public official's failure to recuse himself because of a conflict of interest, and accepting money from the affected private party "in exchange for" his exercise of influence to determine the outcome, constituted official misconduct); Furey, supra, 128 N.J.Super. at 21, 318 A.2d 783 (concluding that the defendant commissioner's acting in favor of conflict of interest could constitute official misconduct); People v. Garson, 6 N.Y.3d 604, 815 N.Y.S.2d 887, 848 N.E.2d 1264, 1273 (2006) (noting that the New York version of the official misconduct statute requires the violation of an ethical rule and a "tangible duty," not simply the duty to avoid the appearance of impropriety).
The State nonetheless argues that the existence of a clear statutory duty to refrain from accepting benefits, and the knowing failure to follow this duty, justifies the criminal charges in this case. The State relies on the New Jersey Conflicts of Interest Law, N.J.S.A. 52:13D-12 to -28. We must consider the viability of this approach.
The 1971 Conflicts of Interest Law requires the appropriate head of each agency, division, board, bureau, commission or other instrumentality of the State Government to promulgate a "code of ethics" to govern and guide the conduct of its officers and employees. N.J.S.A. 52:13D-23(a)(1). It sets forth general standards that each departmental code of ethics must include. For example, the Conflicts of Interest Law requires each code of ethics to reflect the general proposition that "[n]o State officer or employee . . . should accept any gift, favor, service or other thing of value under circumstances from which it might be reasonably inferred that such gift, service or other thing of value was given or offered for the purpose of influencing him in the discharge of his official duties." N.J.S.A. 52:13D-23(e)(6). And, "[n]o State officer or employee . . . should knowingly act in any way that might reasonably be expected to create an impression or suspicion among the public having knowledge of his acts that he may be engaged in conduct violative of his trust as a State officer or employee. . . ." N.J.S.A. 52:13D-23(e)(7).
The statute provides that "[v]iolations of a code of ethics promulgated pursuant to this section shall be cause for removal, suspension, demotion or other disciplinary action by the State officer or agency having the power of removal or discipline." N.J.S.A. 52:13D-23(d). It is clear from this language that the authorization of ethics sanctions does not strip the executive branch of its discretion to prosecute, for example, the offense of bribery under the Code of Criminal Justice. Gregorio, supra, 186 N.J.Super. at 146, 451 A.2d 980.
The Department issued an appropriate Code of Ethics in 1995. It provided that "[a]ll officers and employees should be instructed that any gift or other thing of value received from a person or corporation with whom they have had contact in their official capacity must be reported and remitted immediately to the Ethics Liaison Officer." The Code added that any State officer or employee who violates its provisions "may be subject to sanctions in accordance with the Conflicts of Interest Law (N.J.S.A. 52:13D-12 et seq.), and the *506 New Jersey Code of Criminal Justice (N.J.S.A. 2C:1-1 et seq.). . . . Such sanctions include fines, removal or suspension from office, and ineligibility for future State employment."
A 2002 amendment to the Department's Code of Ethics added language relating to the duty to recuse oneself from a matter in which the State official has a conflict of interest. Each of the defendants acknowledged receipt of these Codes.
In our view, the relevant language of the Conflicts of Interest Law, standing alone, does not set forth a basis for criminal liability under the official misconduct statute. To be sure, the Conflicts of Interest Law sets forth in detail the ethical obligations of state employment. The terms of the statute, in and of themselves, however, are not self-executing and do not proscribe any conduct. Even though the statute requires the various subparts of the government to create codes of ethics in conformity with general standards, it does not assign levels of culpability to particular conduct.
We reject the use of a general "duty to perform other duties in good faith" as a means to impose criminal liability. We find support for this conclusion in the New York Court of Appeals opinion in Garson, supra. The prosecution alleged in that case that the defendant judge received money in exchange for an agreement to refer cases to the donor. 815 N.Y.S.2d 887, 848 N.E.2d at 1268. The court interpreted the codified Rules of Judicial Conduct to impose a duty to refrain from the use of such referrals. It concluded that "the People may rely on the Rules of Judicial Conduct to prove the element of a judge's `duty as a public servant.'" Id. at 1271. To distinguish the earlier holding in People v. La Carrubba, 46 N.Y.2d 658, 416 N.Y.S.2d 203, 389 N.E.2d 799 (1979), the court noted that the current prosecution "rest[ed] not on a violation of the Rules alone but on the acceptance of a benefit for violating an official duty defined by the Rules. Thus, a public servant who violates a tangible duty and further `solicits, accepts or agrees to accept' a benefit for the breach, is subject to prosecution." Id. at 1273.
Unlike the Rules of Judicial Conduct, which specifically dealt with the duties of judicial office and could readily be used as a basis for describing the duties inherent in that office, the Conflicts of Interest Law and Code of Ethics here apply across-the-board to all employees in the Department, thus providing general and generic rules. As we have stated, the State must allege that the individual failed to perform a duty that is specifically required of that office by law or "clearly" inherent in that office. Even if we assume that the duty to decline benefits is a cognizable duty in these circumstances, under the State's theory, the acceptance of any benefit from a vendor by any Department employee under any circumstances would subject the recipient to criminal prosecution. By this rationale, there would be no practical distinction between two key elements of the crime, the failure to perform a duty and the unlawful purpose. They would be one and the same. Likewise, with the failure to report counts, because failure to report an ethical violation could always be construed as acting with intent to deprive the Department of the opportunity to enforce its Code of Ethics, the two elements in those counts would likewise be collapsed into one. This tautology would result in strict criminal liability for nothing more than an ethical violation. We cannot accept this rationale.
We find support as well in the New Jersey case that came closest to holding that the breach of an ethical duty provides sufficient justification for a criminal prosecution. The indictment in Weleck, supra, *507 charged the defendant borough attorney with "the duty to render legal services . . . to the best of his ability and uninfluenced by motives adverse to the best interests of said Borough" and "the duty not to request or accept any gift, gratuity or promise to make any gift under an agreement or understanding that he would act in any particular manner with reference to the affairs of his employer." 10 N.J. at 367, 91 A.2d 751 (emphasis added). The specific count alleged that the defendant demanded money from a private citizen as payment to influence the mayor and borough council to enact a particular ordinance. Id. at 365, 91 A.2d 751. The defendant argued that the second "duty" constituted "a mere statement of an ethical limitation or principle of conduct and not an affirmative duty of office." Id. at 367, 91 A.2d 751. The Court rejected this argument, and for good reason. The indictment did not restrict the allegations to the receipt of a benefit. The indictment charged the receipt of a benefit in exchange for an additional unauthorized act.
We also agree with the trial court that the Conflicts of Interest Law does not provide the criminal defendant with the necessary constitutional protections. The guarantee of procedural due process in criminal law requires that the defendant receive notice of illegality in a clear and understandable fashion. State v. Clarksburg Inn, 375 N.J.Super. 624, 632, 868 A.2d 1120 (App.Div.2005). "[T]he vagueness doctrine sets forth the principle that the law must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." State v. Lisa, 391 N.J.Super. 556, 578, 919 A.2d 145 (App. Div.2007) (citations and internal quotation marks omitted), aff'd, 194 N.J. 409, 945 A.2d 690 (2008). The defendant must be apprised of "that against which he must defend." State v. Spano, 128 N.J.Super. 90, 92, 319 A.2d 230 (App.Div.1973), aff'd, 64 N.J. 566, 319 A.2d 217 (1974).
To be sure, this case does not present the same inadequacy of notice as that rejected by our Supreme Court in Lisa, supra. The State indicted the defendant in that case with the reckless manslaughter of a teenage girl staying at his home; the girl died of multiple organ failure after the ingestion of a number of drugs. 194 N.J. at 410, 945 A.2d 690. The State argued that the law imposed on defendant a duty to act to prevent harm to the girl. Ibid. The State located this duty in the Restatement (Second) of Torts, and instructed the grand jury accordingly. Ibid. The trial court dismissed the indictment on the defendant's motion, and we affirmed. Id. at 411, 945 A.2d 690. The Supreme Court affirmed as well, agreeing that "the Restatement of Torts did not provide sufficient notice of a duty to which a theory of criminal omission liability may attach." Ibid.
Here, the alleged duty does not arise from an amorphous "scholarly treatise that has never made its way into New Jersey substantive criminal law, and perhaps not into our civil law either." Lisa, supra, 391 N.J.Super. at 579, 919 A.2d 145. It arises from an enacted statute. However, for the reasons expressed above, the Conflicts of Interest Law and our jurisprudence do not provide sufficient notice that the unreasonable appearance of impropriety may lead to a defendant's conviction of a crime.
Accordingly, we affirm the dismissal of the twenty-eight charges contained in fourteen pairs of receiving and failure to report counts under N.J.S.A. 2C:30-2b.

VI
Our determination results in the reinstatement of two official misconduct counts against Thompson, one against Fox, and *508 two against Gavin. Accordingly, Thompson and Gavin are also exposed to prosecution on the counts charging them with engaging in a pattern of official misconduct. See N.J.S.A. 2C:30-7a (providing that two or more violations of N.J.S.A. 2C:30-2 constitute the crime of pattern of official misconduct). Therefore, counts one and two, charging Thompson and Gavin respectively with a pattern of misconduct, must be reinstated.
The trial court order is reversed in part, by reinstating counts one, two, seventeen, eighteen, thirty-five and thirty-six, and remanding for further proceedings on those counts. In all other respects, the trial court order is affirmed.
NOTES
[1] The six counts that were not dismissed charged one of the employees of the vendor, Sandra L. Bielanski, with offer of unlawful benefit to public servant for official behavior. N.J.S.A. 2C:27-11b. The correctness of that decision is not before us.
[2] We will refer to Robert K. Thompson as "Thompson," and we will refer to Carmela L. Thompson by her full name.
[3] In all but one of these pairs, Bielanski or deVarenne was identified as the OSI employee. Count twenty-three states that the benefits were provided by unnamed OSI employees.
[4] A person who is not a public official may incur accomplice liability under the official misconduct statute for the purposeful facilitation of a public official's affirmative misconduct or nonfeasance. State v. Hinds, 143 N.J. 540, 549-51, 674 A.2d 161 (1996); State v. Bryant, 257 N.J.Super. 63, 67-68, 607 A.2d 1343 (App.Div.1992) (referring to N.J.S.A. 2C:2-6d).
[5] Thompson was charged with eight pairs of these counts; Carmela L. Thompson was charged with two pairs; Fox was originally charged with four pairs, but, after dismissal of one pair with the consent of the State, remained charged with three pairs; Gavin was charged with nine pairs; and Wood and Eckstein were each charged with one pair. For OSI, deVarenne was charged as an accomplice in four receiving counts, and Bielanski in nine receiving counts.
[6] See Cannel, New Jersey Criminal Code Annotated, comment 1 on N.J.S.A. 2C:30-2 (2008).